(No. 98-CC-0594– )

JUAN LEMES, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 3, 2000.*

JUAN LEMES, *pro se.*

JIM E. RYAN, Attorney General (CHRISTINE RYAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This is a claim for personal injuries brought pursuant to section 8 of the Illinois Court of Claims Act. (705 ILCS 505/8.) The Claimant contends that he was injured when he fell from his top bunk at Jacksonville Correctional Center on April 2, 1997. He claims that he was assigned a top bunk, despite having informed correctional officers that he had a seizure disorder which made it necessary for him to have a bottom bunk. The Claimant is seeking a total of $95,000 in damages.

A hearing was held before Commissioner Clark on July 1, 1999. Testimony was heard from the Claimant; Respondent presented Debbie Rossetto, records office supervisor at Graham Correctional Center, and Dr. Robert McEntyre, medical director at Graham. The Commissioner also considered documents submitted by the Claimant in his complaint and those submitted by the Respondent in its departmental report in his consideration.

The Claimant testified that at approximately 1:00 a.m. on April 2, 1997, he fell from his upper bunk, hitting his chin and hand on the floor and knocking out a tooth. The Claimant stated that, when he came into custody, he told a doctor that he was afraid of seizures he suffered in the past. He said that while incarcerated at Danville, a

psychiatrist prescribed him Tegretol and assigned him to a bottom bunk because of seizures. The Claimant also testified that he told a doctor at Jacksonville, when he arrived there in 1996, that he had epilepsy.

Debbie Rosetto, record office supervisor at Graham, testified that she reviewed the Claimant's master file and found no incident report regarding the fall. She did find medical records that showed that the Claimant was treated on April 2, 1997. She also read the Claimant's grievance, which stated that a November 5, 1996 health status report from Danville was reviewed in connection with the case, but the report made no mention of reports of seizure activity, and the Claimant was not prescribed any seizure medication.

Dr. Robert McEntyre, medical director at Graham, testified that he reviewed the Claimant's medical file, which included a problem list showing the medical problems the Claimant reported. McEntyre stated that the only medical problem listed was a motor vehicle accident from 1985, in which the Claimant fractured his skull and was in a coma for 10-12 days. There were no reports of seizures or epilepsy. McEntyre said that generally, such medical problems would be noted in an inmate's record on a "problem list." The problem list is apparently used as a quick reference to identify potentially serious medical conditions. Mr. Lemes' head injury was classified as a "number one" problem in January, 1990, in IDOC records.

Dr. McEntyre also admitted upon cross-examination that Claimant was prescribed an anti-seizure medication prior to January 11, 1996. The record is unclear as to the duration of Claimant's treatment with said medication and no definitive diagnosis of seizure was made, but Claimant had suffered headaches and "feeling like he had stars in his head." When the anti-seizure medication was

ordered stopped for one month, Claimant was prescribed other medications for headache pain.

Claimant was monitored for seizures following his fall, on July 17, 1997, November 17, 1997 and March 16, 1998. On March 16, 1998, Claimant was released from the clinic for seizure observation and assigned a lower bunk for one year per Dr. McEntyre.

Claimant testified he had been issued a lower bunk due to his medical history for some seven-plus years prior to his fall at Jacksonville. Claimant was apparently first incarcerated in IDOC facilities in January, 1990.

We first note that Claimant requested an interpreter at hearing. A Mr. Roger Williams acted as interpreter. We are not further advised of Mr. Williams' skills as an interpreter nor his relationship, if any, with Claimant or Respondent. Both the hearing transcript and medical records before us reference difficulties in communication between Claimant and IDOC health care providers and Claimant and the witnesses, Commissioner, and court reporter at hearing.

Secondly, Respondent's motion for summary judgment was filed June 28, 1999. Hearing was held on July 1, 1999, at Graham Correctional Center. (The hearing date was not previously of record in the court docket.) The motion for summary judgment was not processed and forwarded for consideration until after the hearing. It was not raised at hearing nor considered in the Commissioner's recommendation to the Court. The Court, lacking notice of the intervening hearing date, entered an order denying Respondent's motion based upon the existence of genuine issues of material fact to be determined at hearing.

Regarding his injuries, the Claimant testified that he still suffers pain in his wrist, lapses in memory and headaches.

In order to prevail on his claim, the Claimant must prove by a preponderance of the evidence that the State had a duty to protect him from harm, that the Respondent negligently breached that duty, and that the negligence was the proximate cause of the Claimant's injury. (*Starks v. State* (1992), 45 Ill. Ct. Cl. 285, 290.) The State owes a duty to prisoners, that being a duty of protection, and the State must exercise reasonable care toward the prisoners that the prisoners' known conditions may require. However, the State is not an insurer of the safety of prisoners under its care. *Id.*

As previously noted, the Claimant's difficulty in communicating in English has been duly acknowledged by the Court. We have extended the broadest legally permissible latitude in considering Claimant's pleadings and proofs. However, we must insist upon adherence to basic legal principles and fundamental fairness to both parties. The Claimant ultimately bears the burden of proving each element of his case. Herein, the dispositive issues are:

1. Notice of Claimant's medical condition to Respondent which would reasonably require assignment to a lower bunk.

2. Breach of said duty of reasonable care by Respondent after notice of foreseeable harm to Claimant or others in similar circumstance.

3. Proof of damages suffered.

4. Proximate cause.

Respondent has argued that Claimant's failure to prove that he had a clinical history of epilepsy is dispositive of the notice issue and ergo, breach. We disagree. The record indicates that Claimant's history of severe head trauma and coma was disclosed and made part of

his medical file in 1990. He was also assigned a lower bunk for seven years prior to transfer to Jacksonville and again so assigned after his fall from a top bunk. Clinical evidence of seizure disorder is certainly *prima facie* proof that a request of a lower bunk should be granted to a reasonable layman. While Claimant's IDOC medical file is bereft of a confirmed seizure history, his unrebutted and supported evidence of severe head trauma, treatment of severe headaches with anti-seizure medication at IDOC health care and subsequent care for continuing headache pain before and after the fall from his bunk indicate Claimant was, more probably than not, a person foreseeably at risk by assignment to an upper bunk.

Respondent offered no evidence as to why Claimant was denied a lower bunk at Jacksonville. The Respondent's witnesses were unable to provide full records to the Court at hearing.

Claimant introduced no evidence as to procedure for assignment of bunks. No evidence of IDOC procedure was introduced by Respondent nor elicited on cross-examination of Claimant. However, the record indicates Claimant was previously assigned a lower bunk for seven years prior to, and for at least one year after, his fall.

We lack expert testimony as to interpretation of Claimant's present condition and the nature and extent of his prior injuries due to the head trauma in 1985. No testimony was offered by Claimant as to his general health and abilities prior to his fall at Jacksonville. Ergo, we are unable to ascertain the measure of damages alleged for pain and suffering and permanency due to alleged memory loss, the wrist fracture, or mouth and dental injuries. (Claimant presented no evidence to support his allegations of memory loss or other injury proximately caused by this fall nor of his alleged economic loss resulting from

diminished mental acuity or injuries on a permanent basis.) The record indicates all medical care was at IDOC expense.

As Claimant has failed to fulfill his burden of proof as to damages sustained and his underlying physical condition prior to the fall, a determination of proximate cause is not possible barring gross speculation and inference by the Court. We lack evidence as to pivotal facts necessary to informed legal analysis.

Claimant has failed to meet his burden of proof as to damages suffered and that the negligence of Respondent was the proximate cause of his injuries.

This claim is hereby denied and dismissed with prejudice.